UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                  :

MARK LEYSE, individually and on behalf of all   :
others similarly situated,
                                   :

                  Plaintiff,         :

       -against-                       :

LIFETIME ENTERTAINMENT SERVICES,      :

                 Defendant.      :
------------------------------------------------------------- X

**ORDER DENYING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION**

13 Civ. 5794 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

           Plaintiff Mark Leyse ("Leyse" or "Plaintiff") brings this putative class action

against Defendant Lifetime Entertainment Services, LLC ("Lifetime" or "Defendant") for

violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq.*

Leyse alleges that Lifetime, or a third party acting on its behalf, placed prerecorded calls to his

residential phone without his consent, as well as to thousands of others, and seeks statutory

damages of $500 per violation, before trebling. On May 15, 2015, Lifetime moved for summary

judgment (Dkt. No. 62), and Leyse moved to certify a class (Dkt. No. 69). For the following

reasons, both Defendant's motion for summary judgment and Plaintiff's motion for class

certification are DENIED.

<b>BACKGROUND</b>

           Lifetime is a cable television channel which airs original scripted series, non-

scripted reality series, and movies, along with syndicated programming that originally appeared

on network television. (Dkt. No. 66 at ¶2.) In 2009, Lifetime was available in New York City to

customers of Time Warner Cable ("TWC"), RCN, Cablevision, DirecTV, and DISH, with TWC

being the predominant cable provider. (*Id.* at ¶4.) Lifetime was available to TWC customers as part of all but the least expensive cable packages offered in 2009. (*Id.* at ¶12.)

                In 2009, Lifetime began airing the television show "Project Runway." (Dkt. No. 65 at ¶3.) Project Runway, which had aired on the television channel Bravo for its first five seasons and is hosted by Tim Gunn ("Gunn"), is a reality television series in which contestants compete against one another in designing specific articles of clothing. (Dkt. No. 66 at ¶14.) In 2009, Project Runway moved from Bravo to Lifetime, but reruns of the show continued to be aired on Bravo. (*Id.* at ¶¶15&23.) Prior to the sixth season premiere of Project Runway, scheduled to be aired on August 20, 2009, TWC moved Lifetime from its long-held channel position, Channel 12, to Channel 62 (the "Channel Change").

                Due to the Channel Change, and Lifetime's fear that it would affect viewership of the Project Runway season premiere, Lifetime considered methods by which to notify its viewers. (Dkt. No. 65 at ¶5.) As methods for notifying customers, Lifetime considered: (i) email; (ii) a "crawl" on TWC channel 12; (iii) television commercials; (iv) an "on hold" message played for customers on TWC's customer service telephone line; (v) a display at TWC retail locations; and (vi) a recorded message. (Dkt. No. 64 Exs. AA, CC, DD.) Finding that some of these methods could not be utilized, Lifetime settled on a recorded voice message by Gunn (the "Message"). (*Id.*; Dkt. No. 65 at ¶5.) Lifetime and Gunn recorded a message saying:

> Time Warner Cable customers, this is Tim Gunn. Do you know
> that Lifetime has moved to Channel 62? Tune in to Lifetime on
> Channel 62 tomorrow at 10 p.m. and see me and Heidi Klum in the
> exciting Season 6 premiere of "Project Runway." The "Project
> Runway" season premiere tomorrow at 10 p.m., following "The
> All-Star Challenge." Be there and make it work – only on
> Lifetime, now on Channel 62.

(Dkt. No. 64 at ¶2.)

2

In order to execute the voice message broadcast, Lifetime's Vice President for Distribution Marketing, Tracey Barrett Powell ("Powell") contacted Todd Hatley ("Hatley") at a third party company called OnCall Interactive. (Dkt. No. 65 at ¶9.) Lifetime provided OnCall with a list of zip codes for the areas in which TWC customers lived in NYC, which it had obtained from TWC. (Dkt. No. 66 at ¶16; Dkt. No. 65 at ¶¶9-10.) Powell directed OnCall to obtain a list of telephone numbers for cable households located within the provided zip codes. (*Id.*) OnCall, now defunct, informed Lifetime on August 11, 2009, that it had purchased a list of telephone numbers from an unknown third-party vendor. (Dkt. No. 64 Ex. B at 43:25-45:2; Ex. C at 7:7-8:7, 31:2-23; Ex D at 59:16-60:15; Ex. S.) Lifetime was never provided with the list of telephone numbers. (Dkt. No. 64 Ex. D at 61:13-15.) Hatley and Matthew Maday, the former CEO of OnCall, both testified that neither they nor OnCall possessed a copy of the list of telephone numbers that was used in conjunction with the Telephone Message, and they did not recall the vendor from whom the list of numbers was purchased. (Dkt. No. 64 Ex. B at 7:13-9:17, 14:18-15:10, 22:20-25, 28:24-30:19, 32:14-25, 43:25-45:2, 63:16-65:15; Ex. C at 7:7-9:19, 31:2-23.)

In 2009, Leyse shared an apartment (the "Apartment") with Genevieve Dutriaux ("Dutriaux") in New York City, in whose name the Apartment was leased. (Dkt. No. 64 Ex. 42:2-43:3, 50:7-10.) The telephone service in the Apartment was also in Dutriaux's name. Leyse routinely checked the voicemail for Dutriaux's telephone number, and has testified, without supporting documentary evidence, that he paid the telephone bill "most of the time." (*Id.* Ex. A at 56:7-19, Ex. I at 4-5.) Leyse provided a personal cell phone number in connection with work. (*Id.* Ex. A at 48:16-24.) Sometime in 2009, estimated by Leyse to be in July, Leyse heard the Message on Dutriaux's answering machine or voicemail. (*Id.* Ex. A at 53:4-56:6.)

3

Leyse played the Message for his counsel (for whom he had previously worked as an investigator of TCPA violations), who recorded it. (*Id.* Ex. A at 27:10-25, 58:9-14.) Four years later, on August 16, 2013, Leyse filed the instant suit.

## LEGAL STANDARD

Under the well-established summary judgment standard, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding the motion, the court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment". *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The court should also "eschew credibility assessments". *Amnesty Am. v. Town of West Hartford*, 361 F.3d. 113, 122 (2d. Cir. 2004). However, "[t]he mere existence of a scintilla of evidence in support of the [non-moving] party's position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The TCPA prohibits any person from "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)". 47 U.S.C. § 227(b)(1)(B). The exceptions are for: (i) calls that are not made for a commercial purpose; and (ii) such classes or categories of calls made for commercial purposes as the Commission determines—(I) will not adversely affect the privacy rights that this section is intended to protect; and (II) do not include the transmission of any unsolicited advertisement". *Id.* § 227(b)(2)(B). The TCPA creates a private right of action for affected consumers, and allows

4

them to recover the greater of their actual monetary loss or $500 for each violation. *Id.* § 227(b)(3). It also allows the district court to increase the award up to treble statutory damages if it finds the defendant's violation was willful or knowing. *Id.*

Under Rule 23, the prerequisites for maintaining a class action are numerosity, commonality, typicality, and adequacy of representation. Fed R. Civ. P. 23(a). Once these criteria are satisfied, a plaintiff must meet at least one of the criteria of Rule 23(b). Rule 23(b)(3), the applicable subsection here, requires a showing "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The proposed class also must be ascertainable. *See Brecher v. Rep. of Argentina*, 2015 WL 5438797 at *2 (2d Cir. Sept. 16, 2015); *see also In re Init. Pub. Offerings Secs. Litig.*, 471 F.3d 24, 30, 44-45 (2d Cir. 2006). "[T]he touchstone of ascertainability is whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.' 7A Charles Alan Wright & Arther R. Miller et al., Federal Practice & Procedure § 1760 (3d ed. 1998); *see also Weiner v. Snapple Bev. Corp.*, No. 07 Civ. 8742 (DLC), 2010 WL 3119452, at *12 (S.D.N.Y. Aug. 5, 2010) (a class must be 'readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling' (internal quotation marks omitted))." *Brecher*, 2015 WL 5438797 at *2.

## DISCUSSION

To make out a claim under the TCPA, Leyse must show that (1) Lifetime called him as a "called party" on a residential telephone line; (2) using an artificial or pre-recorded voice; (3) without consent. *See* 47 U.S.C. § 227(b)(1)(B). There is no genuine dispute that

5

Lifetime called the residential phone line at the address where Leyse resided. However,

Defendant argues that: (i) Leyse does not have statutory standing as a "called party"; (ii) Leyse

does not have Article III standing; (iii) the telephone message left was not for a commercial

purpose and is exempt from the TCPA; (iv) the constitutional avoidance doctrine precludes

deference to the FCC's rulings; and (v) the complaint should be dismissed or stayed pursuant to

the primary jurisdiction doctrine.

## I.  Statutory Standing.

Defendant argues that Leyse is not a "called party" under the TCPA, and therefore

does not have standing to bring a claim under the TCPA.

On July 15, 2015, the Federal Communications Commission ("FCC") issued a

Declaratory Ruling and Order (the "Ruling"), clarifying issues raised through litigation of TCPA

issues. *See* FCC 15-72. In the Ruling, the FCC found that "the 'called party' [under the TCPA]

is the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call,

or the non-subscriber customary user of a telephone number included in a family or business

calling plan". *Id.* at ¶ 73. The FCC went on to explain that it "[found] it reasonable to include in

our interpretation of 'called party' individuals who might not be the subscriber, but who, due to

their relationship to the subscriber, are the number's customary user and can provide prior

express consent for the call". *Id.* at ¶ 75. Either the current subscriber or non-subscriber

customary user of the phone can give consent under the TCPA. *Id.* at ¶ 72.

While only "called parties" under the statute have standing to bring suit under the

TCPA, I find that, on summary judgment, Defendant has not shown that Leyse was not a "non-

subscriber customary user" of the telephone number which Lifetime called with the prerecorded

voice to leave the message. Leyse testified that he lived at the apartment with that phone line for

6

13 years, and that he regularly paid the bill for the telephone line, although he was unable to produce any records confirming that testimony. (*See* Leyse Tr. 43:16-18; 56:12-23.) Construing all facts in the light most favorable to Plaintiff, as I must on a summary judgment motion, I hold that Plaintiff is a called party under the TCPA, and therefore has statutory standing to bring the claim.

An issue not fully addressed in the motion, which remains an issue of fact for trial, is whether Plaintiff's roommate gave consent for the call, which would preclude Plaintiff's recovery under the TCPA.

## II.  Article III Standing.

Defendant also argues that Plaintiff lacks Article III standing to bring a claim. As I recently held in *King v. Time Warner Cable Inc.*, the TCPA creates a cognizable statutory right under Article III. 14-cv-2018 Dkt. No. 33 at pp. 12-13 (S.D.N.Y. July 7, 2015). Plaintiff's complaint alleges violations of that right, which entitles him to bring suit for the inconvenience of receiving unsolicited prerecorded calls. *See id.*

## III.  Exemption from the TCPA, Constitutional Avoidance & Primary Jurisdiction.

Lifetime goes to great lengths to argue that the telephone message was not made for a commercial purpose and is exempt from the TCPA. (*See* Dkt. No. 63 at pp. 14-37.) As Lifetime admits, however, the FCC has ruled twice that a promotion for programming provided by a paid-for service is deemed a commercial advertisement that is barred under the statute. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 Fed. Reg. 44144, 44163 (F.R. July 25, 2003); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 70 Fed. Reg. 19330, 19335 (F.R. Apr.13, 2005). That ruling is reasonable and appropriate, and I accept it. Lifetime's arguments that this Court should ignore

7

those rulings, throw them out on First Amendment grounds, or stay this case until Lifetime seeks reconsideration of them, are not persuasive.

I note that Lifetime states in its motion for summary judgment, as it did previously in the motion to dismiss it filed October 31, 2013, "although Lifetime has not yet submitted to the FCC a petition seeking review of the 2003 and 2005 Reports and Orders and the 2003 and 2005 Final Rules as applied to cable programming, it is fully prepared to do so should this Court apply the primary jurisdiction doctrine and dismiss or stay this case." (Dkt. No. 63 at 42; Dkt. No. 8 at 30.) Nothing in this Order should be construed to prevent Lifetime from pursuing that avenue.

## IV.  Class Certification.

Leyse moves to certify a class of "all persons to whose residential telephone lines Defendant, Lifetime Entertainment Services, LLC, or a third party acting on its behalf initiated, in August 2009, a telephone call using a prerecorded voice to deliver the following message: …". (Dkt. No. 69 at 1.) As the parties are not in possession of a list of the 450,000 phone numbers which Lifetime, or an entity on its behalf, allegedly called in August 2009, Leyse's motion proposes that notification by publication in "New York city newspapers would likely be the most appropriate location, as well as Lifetime's website". (Dkt. No. 83 at 3 n.1.)

Leyse's proposed class fails to meet the ascertainability requirement of Fed. R. Civ. P. 23(b). There is no copy of the list of called numbers that the parties have been able to discover, and the facts concerning calls were allegedly made over a two day period more than six years ago make it unlikely that such a list will be discovered. Since I am unable to determine if any particular individual is a member of Leyse's proposed class, the class is unascertainable, and therefore I deny the motion. *See Brecher*, 2015 WL 5438797 at *2.

8

## CONCLUSION

The motions for summary judgment and for class certification are DENIED. The

case shall proceed on the single violation of the TCPA alleged by Leyse to the residential line at

his apartment. The oral argument scheduled for September 24, 2015, is hereby CANCELLED.

The parties shall appear for a status conference on Friday, October 9, 2015, at 10:00 a.m. to set a

trial schedule. The clerks shall mark the motions (Dkt. Nos. 62 & 69) terminated.

SO ORDERED.

Dated:    September 22, 2015
          New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

9